ABRAHAM V. VAN FLEET AND JOHN T. BIRD, ESQS.,
VICE-CHANCELLORS.

———————

STEPHEN MORRIS et al.

*v.*

THE BALTIMORE AND OHIO TELEGRAPH COMPANY.

A telegraph company erected their poles on complainant's land without any
authority whatever. The complainant, after consultation with his counsel,
took down the poles and filled up the holes in the ground, and instructed his
counsel to apply for an injunction to prevent the company from again erect-

301

ing their poles on his land without compensating him therefor. A lawyer, who afterwards signed the bill as counsel, but who was not at that time complainant's counsel, although he had undertaken, at the request of complainant's solicitor, to ascertain the company's corporate name, was informed by the company's counsel, whom he casually met, that the company would not again erect their poles on complainant's lands, but would probably select another route, which they eventually did. This information, however, was not communicated to complainant or his solicitor. Complainant filed his bill and obtained an injunction, after which the cause went to final hearing.—*Held*, that the complainant, having filed his bill in good faith, was entitled to costs.

Bill for injunction. On final hearing on pleadings and proofs.

*Mr. F. C. Woolman*, for complainants.

*Mr. R. S. Woodruff*, for defendant.

THE CHANCELLOR.

The defendant erected its telegraph poles on the complainants' land in Camden county, without any right, authority or consent to do so. Mr. Morris, one of the complainants, learned on Saturday that the defendant had set up the poles. Late in the afternoon of that day he consulted Mr. Woolman, his solicitor, with a view to restraining the defendant from using the land for its line until it should have compensated him therefor. The result of the interview was a determination on his part to take down the poles and apply for an injunction. He caused them to be taken down and the holes in which the defendant's workmen had set them to be filled up. This was done between Saturday evening and the next Monday morning. On the latter day Mr. Dayton, who afterwards signed the bill as counsel (the solicitor not being then a counselor-at law), was requested by Mr. Woolman to send to the secretary of state a telegram which he, Mr. Woolman, had written, inquiring what the corporate name of the defendant was. Mr. Dayton undertook to do so, but on his way to the telegraph office happened to meet Mr. Miller, the defendant's counsel, of whom he made the inquiry. Mr. Miller asked for his reason for making it, and he replied that he was going to get an injunction against the defendant to

Morris v. Baltimore and Ohio Telegraph Co.

restrain it from erecting its poles upon the complainant's land, to which Mr. Miller rejoined that that was not necessary ; that the complainants had already taken down the poles and filled up the holes. Mr. Dayton then said, " Yes, but I don't want you to put them up any more." Mr. Miller answered that he represented the defendant as its counsel; that an injunction was not necessary ; that the defendant would not do anything in the matter until it was entirely arranged satisfactorily to the complainants, and also said that the defendant contemplated taking a new route, and if it did, that would avoid all the difficulty. The bill was filed on Wednesday following and the injunction issued. The defendant changed its route so as to avoid going on the complainant's land. The cause has gone to final hearing, and the only question between the parties is as to the costs. The defendants urge that when the complainants filed their bill they had an assurance from the defendant's counsel that the defendant would not seek to replace the poles without their consent, and it insists that therefore there was no necessity for the suit. But the defendant had, without any right or authority, invaded the complainants' premises and set up its poles there. The answer, indeed, alleges that it had the permission of the complainants' tenant of the property, but this is disproved. The poles were not taken down by the defendant but by Mr. Morris. Mr. Dayton was not the complainants' counsel at the time of his conversation with Mr. Miller, and he did not communicate the assurance which Mr. Miller had given him either to the complainants or to Mr. Woolman, nor make any mention of the conversation between him and Mr. Miller, but merely gave Mr. Woolman the name of the defendant as given to him by Mr. Miller, so that neither the complainants nor their solicitor knew anything about the assurance when the injunction was obtained. It appears, it may be stated, that the next morning after the poles were taken down, the employees of the defendant remarked, on finding that they were down, that they could easily put them up again. Mr. Morris, however, was not so informed before the bill was filed. Under the circumstances, the complainants. (who acted in entire good faith) are entitled to costs.